## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIGENE CORPORATION | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 01-752-MPT |
| | ) |
| VENTANA MEDICAL SYSTEMS, INC., | ) |
| and BECKMAN COULTER, INC. | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

Currently before the court is defendant Beckman Coulter, Inc.'s ("Beckman")

motion to dismiss Digene Corporation's ("Digene") action against it as *res judicata*.[1] For

the reasons discussed below, Beckman's motion is granted.

## BACKGROUND[2]

_____

[1] D.I. 311.

[2] A detailed recitation of the relationship of the parties and transactions among
the parties to this litigation, their predecessors in interest, and other third parties is
found in *Digene Corporation v. Ventana Medical Systems, Inc.*, 316 F. Supp. 2d 174 (D.
Del. 2004), familiarity with which is assumed by the reader. Briefly, the relationships
among the various entities are as follows. The '332 patent issued to Life Technologies
Inc. ("LTI") on July 18, 1989. In August 1990, LTI, Digene's predecessor, entered into a
cross-licensing agreement ("CLA") with a foreign competitor, Institut Pasteur ("IP"), to
exploit the emerging technology related to HPV products. The CLA involved a number
of patents, including the '332 patent, and was intended to benefit only five companies,
(the "Group of Five"), who were permitted to create and sell products using the patents
from LTI and IP. D.I. 414 at 6-7. Pursuant to the CLA, LTI cross-licensed its HPV
patents to IP and subsequently permitted IP to sublicense Beckman. LTI transferred its
HPV business to Digene, including the CLA, in December 1990. In June 1991, under
the Sublicensing Agreement ("SLA"), IP sub-licensed its rights obtained in the CLA to
Beckman. In the mid-1990s, Ventana began selling HPV products manufactured from
cell paste acquired from Beckman. In September 2002, Ventana allegedly acquired
Beckman's rights in the CLA and SLA through the 2002 APA. Beckman and Ventana
also executed a Side Letter Agreement which afforded Beckman the opportunity to buy

On November 19, 2001 Digene filed a complaint against Ventana Medical

Systems, Inc. ("Ventana") for willful infringement of United States Patent Nos. 4,849,331

("the '331 patent") and 4,849,332 ("the '332 patent") in conjunction with the

development, manufacture, marketing, sales, and offers for sale of its INFORM® HPV

High Risk Probe and its INFORM® HPV Low Risk Probe Products.[3]  Digene further

alleged that Ventana willfully induced others to infringe the patents-in-suit.[4]  In the initial

complaint, Digene sought, among other things, damages for Ventana's past

infringement, enhanced damages, and attorneys' fees for Ventana's willful infringement,

and an injunction against Ventana's continued infringement.[5]  On February 2, 2002,

Ventana answered the complaint, denying infringement and raising several defenses,

including the affirmative defense that its allegedly infringing activities are licensed under

the '332 patent.[6]

On September 23, 2002, Ventana and Beckman executed an Asset Purchase

---

cell paste from Ventana and to make probes.
        The court ordered arbitration in May 2004, which required Digene to arbitrate all
claims against Beckman arising out of the CLA before the International Centre for
Dispute Resolution ("ICDR").  In its decision, the arbitration panel concluded that the
CLA permitted Beckman to assign its rights through the SLA, and further, by entering
into the SLA, Beckman did not violate the CLA.  However, it held that "when the
purported assignment by Beckman to Ventana is viewed as a whole (including the
Addendum and the Side Letter Agreement), the transaction violates" the CLA's
prohibition against further sub-licensing.  D.I. 313 at A106 (*Digene v. Beckman*, ICDR
Final Award).

   [3] D.I. 1, ¶¶ 7,8.

   [4] *Id.*, ¶ 9.

   [5] *Id.*, ¶ 10.

   [6] D.I. 6.

Agreement (the "2002 APA"), which provided that Ventana would purchase Beckman's entire right, title and interest in certain assets, including rights under a 1991 SLA between Institut Pasteur and Beckman.[7]  On October 18, 2002, Digene moved for leave to file an Amended Complaint,[8] which the court granted on December 10, 2002.[9]  On December 13, 2002, Digene filed its Amended Complaint, adding Beckman as a defendant and additional claims, including civil conspiracy.[10]  On December 27, 2002, Beckman filed a motion to compel arbitration, to the stay proceedings, and to dismiss the conspiracy claim in the Amended Complaint.[11]

On January 28, 2003, Digene moved for leave to file a Second Amended Complaint ("SAC").[12]  Leave was granted by the court,[13] and the SAC was deemed filed on March 5, 2003.[14]  In that complaint, Digene accuses Beckman of contributory infringement or inducement of infringement of the '332 patent (Count II), tortious interference with business relations with regard to the '332 patent (Count III) and civil

---

[7] *Digene*, 316 F. Supp. 2d at 182.

[8] D.I. 93.

[9] D.I. 118.

[10] D.I. 119.

[11] D.I. 128.  Ventana also filed a motion seeking, among other things, that the court compel Digene to arbitrate its claims against it.  *Digene*, 316 F. Supp. 2d at 175; D.I. 128.  On March 1, 2004, the court denied several of the parties' motions, without prejudice.  *See* D. I. 260.

[12] D.I. 139.

[13] D.I. 160.

[14] D.I. 174.

conspiracy for conspiring with Ventana to infringe or induce others to infringe the '332 patent (Count IV).[15]

On May 7, 2004, the court ordered Digene and Beckman to arbitration and stayed this case pending the outcome of that arbitration.[16]   In so ordering arbitration, the court found that the claims, that is, Counts II through IV of the SAC, "arise out of conduct associated with Digene's rights under the '332 patent . . . and the factual underpinnings . . . necessarily implicate the CLA and its arbitration provisions. . . ."[17]   As a result, the court concluded that

> Beckman may arbitrate Digene's claims against it that implicate Beckman's rights under the CLA; that is, Beckman's rights to receive a sublicense from IP to develop, make and have made, use, sell, market and otherwise commercially exploit products and services pertaining to HPV types 31, 35, 43 and 56. . . .[18]

Arbitration took place during March 2006 and the arbitration panel issued its award on July 27, 2006.[19]   The court lifted the stay of these proceedings on August 15, 2006[20] and on August 29, 2006, Beckman filed the present motion under consideration.[21]

---

[15] *Id.* at 14-15.  Recently, the court granted Ventana's motion to dismiss Count IV, the civil conspiracy claim.  D.I. 416 (issued March 6, 2007).

[16] *Digene*, 316 F. Supp. 2d at 186.

[17] *Id.* at 185.

[18] *Id.*

[19] *See* D.I. 332 at 2.

[20] D.I. 297.

[21] D.I. 311.

## DISCUSSION

### Motion to Dismiss

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must assume the truth of all well pleaded factual allegations set forth in the complaint, and must construe them in the light most favorable to the non-moving party.[22] "While a court will accept well-plead allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation."[23] Although under a Rule 12(b) review, the focus is on the pleadings, "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" may also be part of the court's consideration.[24] Despite the literal language of Rule 12(b), conversion[25] is not automatically required when a court considers documents and other materials outside the pleadings.[26] As a result, this court may reference orders and other items of record in

---

[22] *Doe v. Delie*, 257 F.3d 309, 313 (3d Cir. 2001).

[23] *In re Cendant Corp. Sec. Litig.*, 190 F.R.D. 331, 334 (D.N.J. 1999) (citing *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n.2 (1977)).

[24] *Oshiver v. Levin, Fishbeing, Sedran & Berman*, 38 F.3d 1380, 1384, n.2 (3d Cir. 1994); *see also Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 256, n.5 (3d. Cir. 2006); *Douris v. Dougherty*, 192 F. Supp. 2d 358, 362 (E.D. Pa. 2002); *Cowan v. Ernest Codelia, P.C.*, 149 F. Supp. 2d 67 (S.D.N.Y. 2001); *Indeck Maine Energy, L.L.C. v. ISO New England Inc.*, 167 F. Supp. 2d 675 (D. Del. 2001).

[25] The process of treating a motion to dismiss as a motion for summary judgment is called "conversion." *In re Rockerfeller Center Properties, Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).

[26] *Id.* In analyzing Rule 12(b) and the types of material that a court may consider without converting the motion to dismiss, the Third Circuit Court of Appeals relied on and directed review of the article by Kurtis A. Kemper, *What Matters Not Contained in*

5

the present case, including its decision on arbitration, motions filed by the parties and

the arbitration award, which is incorporated in the stipulation and order to confirm that

award and enter judgment thereon, under a motion to dismiss.

## Summary Judgment[27]

A grant of summary judgment pursuant to Fed. R. Civ. P. 56(c) is appropriate "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."[28]  A Rule 56(c)

movant bears the burden of establishing the lack of a genuinely disputed material fact by

demonstrating "that there is an absence of evidence to support the nonmoving party's

case."[29]  "Where the record taken as a whole could not lead a rational trier of fact to find

---

the Pleadings May Be Considered in Ruling on a Motion to Dismiss under Rule 12(b)(6)
of the Federal Rules of Civil Procedure or Motion for Judgment on the Pleadings Under
Rule 12(c) Without Conversion to Motion for Summary Judgment, 138 A.L.R. Fed. 393,
1997 WL 475158 (1997). Id. at n.10.

[27] Although Beckman filed a motion to dismiss, it included materials outside the
literal definition for pleadings. Most of the documents referenced by Beckman are
either orders or judgments of this court entered after the SAC was filed, and the
arbitration findings and award, which are incorporated in the court's judgment of
September 12, 2006. D.I. 328. The parties' briefs and arguments address the issue of
conversion. During oral argument on February 22, 2007 (D.I. 414 at 100-104) and in a
subsequent telephonic conference on May 22, 2007 (D.I. 432 at 13-15), Digene
confirmed that it had notice that the court was considering conversion and did not
desire any further submissions. Therefore, the standard for summary judgment is
mentioned for completeness.

[28] Lujan v. National Wildlife Federation, 497 U.S. 871, 884 (1990).

[29] Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

for the non-moving party, there is no genuine issue for trial."[30]  To avoid summary
judgment, a plaintiff must offer "concrete evidence from which a reasonable [trier of fact]
could return a verdict in his favor" and may not rely on unsupported assertions or
conclusory allegations.[31]  Even so, the nonmovant must be given the benefit of all
justifiable inferences and the court must resolve any disputed issue of fact in favor of the
nonmovant.[32]

## POSITION OF THE PARTIES

Digene proposes that, in light of the arbitration provision in the CLA, New York
law applies to the analysis of claim preclusive effects or the application of *res judicata*.  It
reasons that federal courts will apply choice-of-law provisions which require state rules
to govern arbitration.  Even in the absence of the parties' choice-of-law clause, Digene
posits that a federal court deciding state claims must apply that state's claim preclusion
rule, citing *Semtek Int'l Inc v. Lockhead Martin Corp.*[33]  Digene contends that the cases
relied upon by Beckman in its opening brief are inapplicable because those matters do
not involve a choice-of-law clause, and therefore, are factually distinct from the present
matter.  It further argues that applicable New York law refutes Beckman's argument that

---

[30] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

[31] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).

[32] *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992).

[33] 531 U.S. 497, 508-509 (2001) (which held since claim preclusion is a matter of
state substantive law, when a federal court is ruling upon *state claims* it applies the
state claim preclusion rule).

7

Digene's claims are barred because they were not adjudicated during the arbitration.[34]
According to Digene, New York applies a narrow form of *res judicata* and only bars
those issues actually adjudicated, submitted to, relied or "passed upon" by the
arbitrator.[35]  It contends that New York does not bar claims raised in arbitration and then
withdrawn.[36]

Beckman counters that the court may take judicial notice of its own orders and
rulings under Third Circuit law[37] and contends that this court expressly found that the
claims raised by Digene against Beckman all flowed from the CLA and were arbitrable
under the arbitration clause.  It maintains that this court's records alone are sufficient to
demonstrate that Digene's causes of actions are *res judicata*.  Contrary to Digene's
argument, Beckman submits that the preclusive effect of a judgment is determined by the
substantive law of the court issuing the initial adjudication and therefore, federal law
applies.[38]  As a result, Beckman posits that, under the law of this jurisdiction, *res judicata*
operates against re-litigating matters offered and considered and those that could have

---

[34] *Rembrandt Industries, Inc. v. Hodges International, Inc.,* 344 N.E.2d 383, 384
(N.Y. 1976).

[35] *Cine-Source, Inc. v. Burrows*, 180 A.D.2d 592, 594-595 (N.Y. App. Div. 1992).

[36] *Conforti v. Eisele, Inc v. William J. Scully, Inc.*, 98 A.D.2d 646, 647 (N.Y. App.
Div. 1983).

[37] *Oshiver v. Levin, Fishbeing, Sedran & Berman*, 38 F.3d 1380, 1384, n.2 (3d
Cir. 1994); *see also* F.R.E. 201(d).

[38] *Paramount Aviation Corp. v. Augusta*, 178 F.3d 132, 135 (3d Cir. 1999).

8

been raised.[39] Should the court apply New York law, Beckman contends that that law is the same as the federal law for *res judicata*, and Digene's claims are barred.[40]

## ANALYSIS

Claim preclusion or *res judicata*[41] provides "dispositive effect to a prior judgment if a particular issue, although not litigated, *could have been raised* in the earlier proceeding."[42] It "bars repetitious litigation based on the same cause of action."[43] The factors that a court must examine to determine application of the doctrine are: "(1) final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action."[44] In determining whether the matters involve the same cause of action, courts look to "whether there is an essential similarity of the underlying events giving rise to the various legal claims."[45] Further, the *Restatement (Second) of Judgments* § 24 cmt. a, relied upon by federal courts in a *res*

---

[39] *Cramer v. General Telephone & Electronics Corp.*, 582 F.2d 259, 266 (3d Cir. 1978) (citing *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876)); *see also United States v. Panhandle Eastern Corp.*, 681 F. Supp. 229, 235 (D. Del. 1988).

[40] *Roggio v. Nationwide Mut. Ins. Co.*, 66 N.Y.2d 260, 263 (N.Y. 1985); *Corto v. Lefrak*, 546 N.Y.S.2d 856, 857 (1st Dept. 1989).

[41] Review of the cases cited herein suggests that the Second and Third Circuits' standards for *res judicata* are similar, if not the same.

[42] *Board of Trustees of Trucking Employees Welfare Fund Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992) (emphasis added).

[43] *Cramer*, 582 F.2d at 266 (3d Cir. 1978).

[44] *Corestates Bank v. Huls American, Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) (citing *Centra*, 983 F.2d at 504).

[45] *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 984 (3d Cir. 1984).

*judicata* analysis, provides:

> The present trend is to see [a] claim in factual [as opposed to legal] terms and to make it coterminous with the transaction regardless of the number of substantive theories . . . that may be available to the plaintiff. . . .[46]

Deciding whether a claim could have been raised "depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims."[47] In their analysis, courts are directed to review the underlying facts and their relationships, such as, in time, space, origin or motivation, "whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties expectations or business understanding or usage."[48] A review of the "totality of the circumstances in each action" to determine the "essential similarity in the underlying events"[49] is required. The "could have been" language is inaccurate since the focus is not on whether, under procedural rules, the assertion of the claim is allowed: rather, the standard is whether the "claim was sufficiently related to the claims that were asserted in the first proceeding that it *should have been* asserted in that proceeding."[50]

In the present action, there is no dispute that the arbitration award operates as a final judgment on the merits or that the same parties are involved. The controversy in the

---

[46] *See Corestates*, 176 F.3d at 194; *Pike v. Freemen*, 266 F.3d 78, 91 (2d Cir. 2001).

[47] *Pike*, 266 F.3d at 91(internal citations and quotations omitted).

[48] *Id.*

[49] *Corestates*, 176 F.3d at 194.

[50] *Pike*, 266 F.3d at 91(emphasis in original).

motion under consideration focuses on which law (New York or federal law) on *res judicata* applies, and the effect of that law, specifically regarding the meaning of "could have been raised." Therefore, the third factor, whether the arbitration and the present action are based on the same cause of action, is at issue.

The Supreme Court cases upon which Digene relies do not stand for the proposition that when a choice-of-law provision regarding arbitration is included in a contract, federal courts must apply the applicable state law of claim preclusion. *Semtek Int'l Inc. v. Lockheed Martin Corporation* involved the preclusive effect of a dismissal by the United States District Court for the Central District of California on a subsequent action on the same claims brought in state court in another jurisdiction. The jurisdiction of the California district court, unlike the matters in the present action, was based on diversity, that is, state law breach of contract and various business torts. The court dismissed the original action on the basis of California's two-year statute of limitations. In dismissing the action, the lower federal court adopted the language suggested by the defendant and dismissed the claims in their entirety on the merits and with prejudice.[51] A substantial part of the Supreme Court opinion involved the analysis of FRCP 41(b) and determined that a judgment under that rule or "on the merits" is not automatically entitled to preclusive effect. The opinion further concluded that "federal common law governs claim preclusive effect of a dismissal by a federal court *sitting in diversity*."[52] The instant matter is a patent infringement case, that is, a case directed to federal law. Jurisdiction is

---

[51] 531 U.S. 497, 499-500.

[52] *Id.* at 505-506, 508 (emphasis added).

11

based on the application of the Patent Act and not state law. All of the claims against Beckman arise out of conduct associated with Digene's rights under the '332 patent through the CLA.

In *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, the Supreme Court held that the application of the California Arbitration Act was not pre-empted by the Federal Arbitration Act ("FAA") where the parties agreed that their arbitration agreement was governed by California law.[53] That case involved a construction contract, wherein a dispute arose regarding compensation for extra work. The defendant moved to stay the arbitration, pursuant to the California Code, pending the resolution of related litigation between the parties. The state Superior Court granted the motion to stay, and the California Court of Appeals affirmed. In upholding the decisions of the state courts, the Court agreed that their interpretation of the choice-of-law provision as meaning that the parties intended the California *rules of arbitration* apply, including the stay provision, rather than the FAA provisions, was proper. The Court noted that "[t]here is no federal policy favoring arbitration *under a certain set of procedural rules*; the federal policy is simply to ensure the *enforceability*, according to their terms, of private agreements to arbitrate."[54] Therefore, contrary to Digene's suggestion, *Volt* does not stand for the proposition that a choice-of-law clause in an agreement with an arbitration provision results in the application of state law on *res judicata* to federal claims in a federal court.

---

[53] 489 U.S. 468, 470 (1988).

[54] *Id.* at 476 (emphasis added).

Digene cites to *Rembrandt Industries v. Hodges Intern., Inc.*[55] for the proposition

that under New York law, *res judicata* only bars claims actually litigated before the

arbitrators, pointing to the comment "[w]here, however, an issue not passed upon by the

arbitrators is the subject of a later action, obviously the award is not a bar to that

action."[56] That remark, however, was explained in the later decision of *Firedoor*

*Corporation of Amercia v. McFarland Builders, Inc.*, wherein the court determined:

> However that comment was made in the context of a litigation in which a
> factual issue was presented as to whether or not the arbitrators had failed
> to consider the merits of relevant evidence advanced by a party to the
> arbitration, and we *doubt* that the comment was intended to have a broader
> application.[57]

The *Firedoor* court further concluded that it would be inconsistent with the

contractual obligation to arbitrate all issues and disputes for a party to withhold from the

arbitrator any claim "of which it had knowledge at a time when the [claim] could

appropriately be heard in the arbitration."[58] The court also recognized the concepts of

general and limited submissions as antiquated since they were based primarily on

decisions prior to 1920 which arose from voluntary submissions to arbitration and not

based on contractual obligations to arbitrate.[59]

*Conforti & Eisele, Inc. v. William J. Scully, Inc.*,[60] a case cited by both parties,

---

[55] 344 N.E.2d 383, 385 (N.Y. 1976).

[56] *Id.*

[57] 79 A.D.2d 356, 360 (N.Y. App. Div. 1981) (emphasis in original).

[58] *Id.* at 359.

[59] *Id.*

[60] 98 A.D.2d 646 (N.Y. App. Div. 1983).

13

referenced both the *Rembrandt Industries* and *Firedoor Corp.* matters for the proposition

that the determination of issue preclusion is decided by the court and not the arbitrator.

In the one page decision, the court noted that claims specifically withdrawn during the

first arbitration did not operate as either *res judicata* or collateral estoppel.[61]  That case,

however, does not indicate whether any contractual obligation to arbitrate existed, a

distinction recognized by *Firedoor.*

In the later case of *Corto v. Lefrak,*[62] where the parties executed a licensing

agreement which required arbitration, the court found that since all of the plaintiff's claims

arose from the agreement considered during arbitration and the plaintiff had the "full and

fair opportunity to litigate" those issues, such claims were determined or could have been

determined, and therefore, barred under *res judicata* and collateral estoppel.[63]

*Pike v. Freeman* recognized that *res judicata* operates to bar claims in federal

court as a result of the binding effect of prior findings during arbitration.[64]  *Pike* also

addressed whether federal law or state law should govern a federal court's analysis of

the preclusive effect of an arbitration decision and determined that there is no significant

difference between New York preclusive law and federal preclusive law.[65]  In *Pike,* the

---

[61] *Id.* at 647.

[62] 155 A.D.2d 246 (N.Y. App. Div. 1989).

[63] *Id.* at 247.

[64] 266 F.3d 78, 90 (2d Cir. 2001).

[65] *Id.* at 91 n.14 (citing *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir. 1997) (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981) ("Under both New York and federal law, the doctrine of res judicata or claim preclusion" is the same.))).

court analyzed whether the defendant's indemnification counterclaim was based on the same transaction as the plaintiff's breach of contract claims. In finding that it was not and therefore, not barred by *res judicata*, the court noted that neither were related in time or origin. The court held while the breach of contract claims were based on the parties' conduct before the arbitration occurred, the indemnification counterclaim could not arise until after the arbitration award was granted. Moreover, the indemnification counterclaim was based on an agreement (the "Engagement") separate and distinct from the Agreement before the arbitrator and upon which the plaintiff's breach of contract claims arose. Further, the counterclaim was not based on the parties' conduct before the arbitration award, but arose out of that award by operation of the Engagement. The court found, however, that, in the subsequent suit to confirm the arbitration award, the defendant's indemnification cross-claims against his co-respondents in arbitration were barred under *res judicata* since those claims were based on the Agreement and should have been raised during arbitration.[66]

When the present matter was determined arbitrable as between Digene and Beckman, the court specifically found that Counts II through IV in the SAC against Beckman were within the scope of the CLA's arbitration clause. In so deciding whether the claims fell within the scope of the arbitration clause, the court focused "'on the *factual underpinnings* of the claim[s] rather than the legal theory alleged in the complaint.'"[67]

---

[66] *Id.* at 89.

[67] *Digene Corp. v. Ventana Med. Sys., Inc.*, 316 F. Supp. 2d 174, 185 (D. Del 2004) (quoting *Medtronic Ave. Inc v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) (emphasis added)).

This court held that all of Digene's claims that implicated Beckman's rights under the CLA, which included Beckman's rights to receive a sublicense "to develop, make, have made, use, sell and otherwise commercially exploit" the '332 patent were arbitrable. The parameters for claims subject to arbitration included those falling within the definition of infringement, including inducement to infringe and contributory infringement.[68]  Thus, the analysis employed by this court to ascertain whether Digene's claims were subject to arbitration is not dissimilar to the analysis under *res judicata*.

In the SAC, Digene's allegations of infringement and tortious interference are based on the various agreements between Beckman and Ventana and how those agreements, and the activities resulting therefrom violate the CLA.  Digene contends that under their amended Manufacturing Agreement, Beckman was not responsible for the manufacture of the subject HPV materials; rather, those materials would be manufactured by an independent third party under contract with Ventana, and not Beckman.  For HPV cell paste manufactured by that third party, the starting natural cell cultures would be provided to the manufacturing facility by Ventana, and not Beckman, and shipments would be sent directly to Ventana and not Beckman.  Beckman would have no responsibility or control over the identity, content or integrity HPV materials. According to Digene, the Manufacturing Agreement relegated Beckman to that of a paper conduit, and as a result, is an improper effort to avoid the sublicensing prohibition in the CLA and the SLA.

Further, Digene charges that Beckman provided Ventana with raw cell paste, not a

---

[68] *See* 35 U.S.C. § 271.

finalized product, which Ventana converted into products, covered by the patents of the CLA, for its own benefit and not for Beckman's use, which also allegedly violated the CLA.

The aforementioned allegations are incorporated by reference in charging Counts II through IV as the factual bases for contributory infringement, inducement to infringe and tortious interference. Therefore, the same underlying facts and same transaction or connected series of transactions are involved and dependant upon the same or similar evidence needed to support allegations of infringement and violating the CLA.

In support of its Opinion, the court, in the Order of May 7, 2004 required the parties to arbitrate "Digene's claims against Beckman that *arise out of* Beckman's rights under the CLA."[69] Digene's conduct in arbitration reveals its understanding of this court's opinion and the intent it attached to the arbitration provision of the CLA. In its initial filing Digene described the nature of the dispute as "whether Beckman Coulter, Inc. has complied with its obligation and/or rights under a Cross License Agreement [CLA] . . . *including without limitation*, the claims, cross claims and disputes described in the following documents . . . Second Amended Complaint . . . and May 7, 2004 . . . decisions of the U.S. District Court for the District of Delaware . . . ."[70] Although the relief sought, a declaratory judgment and preliminary and permanent injunction, remained the same, Digene modified its original description of the dispute when it responded to Beckman's request for a statement of particulars by seeking an award that determined the following:

---

[69] *Digene*, 316 F. Supp. 2d at 186 (emphasis added).

[70] D.I. 313 at A042.

17

that the terms of the CLA prohibited Beckman from granting any sublicense; that Beckman could not provide cell paste to a third party for incorporation into any *in vitro* diagnostic product or component thereof nor could it allow a third party to supply such paste to another third party for incorporation into any *in vitro* diagnostic product or component thereof; that Beckman's sublicensing rights were restricted to itself and its affiliates; that Beckman had no right to assign the CLA patent rights; and, any other restriction of rights under the CLA as determined by the arbitrators.[71]

In response, Beckman asserted affirmative defenses, a request for attorneys' fees and costs and a counterclaim. Beckman's counterclaim, under paragraphs one and two, mirrored certain of Digene's particulars and also sought an award that its assignment of the CLA and SLA to Ventana did not violate the terms of the CLA; that the ICC's arbitration award is binding on Digene (which Beckman later withdrew); and that it did not violate the CLA. On motion by Beckman, the arbitration tribunal struck Digene's request for it to generally determine what other restrictions were imposed on Beckman's license under the CLA as ambiguous as to the claim and relief requested. Digene proceeded to arbitration on its modified counts.

In its post-hearing brief, however, Digene resurrected its prior contentions regarding the dispute by demanding that: Beckman's assignment to Ventana of its rights under the CLA and SLA be invalidated; the Manufacturing Agreement and its letter modifications be invalidated; Beckman be enjoined from selling cell pastes containing the virus types that are the subject of the CLA; no third party has the right to practice the

---

[71] *Id.* at A043.

18

patents of the CLA by virtue of purchasing cell paste; Beckman's rights under the CLA and SLA be terminated; and Digene be awarded attorneys' fees and costs related to the arbitration.[72]  Those "new" issues, except for attorneys' fees and costs, were opposed by Beckman.  Digene responded by arguing that its post-hearing statement of relief, except for terminating Beckman's interest in the CLA and SLA, had been previously requested in its statement of particulars.  The arbitration tribunal found that consideration of the additional requests would be prejudicial to Beckman.  It further held that the new relief sought to invalidate agreements to which Digene is not a party and to which Ventana, a non-party to the arbitration, is.  The tribunal specifically determined that Digene "had the opportunity to litigate fully in this proceedings issues involving Ventana . . . but . . . chose to oppose Ventana's Petition to Participate . . . ."[73]

Digene's back and forth approach of submitting issues to arbitration evidences that it intended and knew that arbitration was the forum where its dispute in the instant matter with Beckman was to be decided.  Digene's conduct further proves that an essential similarity exists between the underlying facts giving rise to the various legal claims raised in its lawsuit and initially presented in arbitration.

The contractual obligation under paragraph 11 of the CLA requires the parties to arbitrate a "dispute or controversy . . . arising out of this Agreement. . . ."[74]  In interpreting that provision, this court performed a detailed review of history of the various entities

---

[72] *Id.* at A046-47.

[73] *Id.* at A094.

[74] *Digene*, 316 F. Supp. 2d at 178.

related to the CLA, including the relationship between LTI and Digene, IP and Beckman and LTI and IP, the background in drafting the CLA, the language of the CLA, the circumstances surrounding the execution of the CLA, Digene's conduct regarding Beckman's status under the CLA, prior negotiations between Digene and Beckman, including Digene's attempts to purchase Beckman's licensing rights and the events leading up to and including the APA between Beckman and Ventana. The arbitration tribunal performed a similar, but more detailed review of the background and events leading up to the filing of the lawsuit in this court in its eighty page finding and noted similarities in the compiled evidentiary record between this court's decision and the arbitration record.[75] In light of Beckman's license under the CLA and the SLA, whether it induced infringement or contributed to infringement by its relationship with Ventana was dependent upon the interpretation of the CLA and certain agreements between Beckman and Ventana. Further, because of Beckman's rights under the CLA through the SLA, whether it could tortiously interfere with Digene's potential business opportunities also hinged upon the same agreements, and what obligations and privileges Beckman had thereunder.[76]

What Digene is presently arguing is inconsistent with the contractual obligation to arbitrate under the CLA, circumvents the prior direction of this court, authorizes it to

---

[75] D.I. 313 at A096.

[76] In light of the court's findings at D.I. 416 which granted Ventana's motion to dismiss on Count IV (civil conspiracy), that count does not need to be addressed in this decision. In any event, the combination and conspiracy is based on inducement to infringe by Beckman arising from its arrangement with Ventana under the various agreements discussed herein.

solely limit the scope of review in the forum to which it agreed and evade *res judicata*

when it had knowledge of the claims, the complete and full opportunity to be heard in

arbitration, and chose to initially submit all related issues.  Those matters have already

been evaluated twice by two different forums between the same parties and Digene, in

essence, is asking for a third opportunity.

**CONCLUSION**

For the reasons contained herein, Beckman's motion to dismiss (D.I. 311) is

granted.

Date: June 12, 2007

U. S. Magistrate Judge